**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 16-cr-477 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| DARRIUS WASHINGTON | ) | |

**MEMORANDUM OPINION AND ORDER**

The United States of America (the "Government") has charged Defendant Darrius Washington with one count of unlawful possession of a firearm by a felon. [See 1.] Before the Court are the Government's consolidated motions *in limine* [48] and Defendant's twelve motions *in limine* [35; 36; 37; 38; 39; 40; 41; 42; 43; 44; 45; 46]. For the reasons set forth below, the Government's motion [48] is granted in part and denied in part, and Defendant's motions [35; 36; 37; 38; 39; 40; 41; 42; 43; 44; 45; 46] are granted in part, stricken in part, and denied in part. This case remains set for a jury trial to commence on August 28, 2017.

I.     **Background**

On May 12, 2016, two Chicago Police Department officers observed Defendant Darrius Washington on the corner of East 84th Street and South Buffalo Avenue. As the officers approached the corner in their unmarked squad car, the Government alleges that Defendant threw a high-polished, stainless steel gun into the fenced yard of a residential building a few feet away. Defendant started walking away, but was arrested. A firearm was recovered from the fenced yard. Defendant later told police that one of his friends had thrown the gun. Defendant is set to go to trial before a jury on August 28, 2017, and both sides have filed several motions *in limine*.

## II.    Government's Motions in Limine

### A.    Defendant's Music Video (Motion 1)

The Government seeks to admit a music video posted on YouTube on February 18, 2016 that the Government believes shows Defendant and several other men holding and pointing firearms at the camera. The video, which the Court has viewed *in camera*, depicts at least two firearms: a smaller, silver-colored high-polish pistol and a larger assault rifle comparable to an AK-47. The song is called, "Hang with Me," and the artist is "King Coke." The song's lyrics refer to drugs, guns, and gangs, among other things. The Government's motion attaches still-frames from the video, including two that appear to show Defendant holding this pistol and one that shows a close up of the pistol while it is held by someone else. According to the Government, this gun and the gun recovered by police on May 12 are the same. [48, at 5.] Both have "engraved markings on the slide immediately to the right of the blemish or alteration; raised front and rear sight posts; dark-colored grips; exposed hammers; ejection ports located on right side of slide; and trigger guards with similar designs." *Id.* at 4. The Government seeks to admit (1) the YouTube video; (2) the still-frames from the video; and (3) testimony regarding the similarities between the gun in the video and the gun recovered by police. *Id.* at 5. The Government argues that it wants to admit this evidence to show "that Defendant actually had the ability to exercise control over, and did in fact exercise control over, the exact same pistol both in the video and when CPD arrested him in May." *Id.*

Defendant opposes this request on three main grounds. First, he claims that the Government cannot authenticate this video under Federal Rule of Evidence ("Rule") 901 or that the gun depicted is "a real gun as opposed to a prop or toy gun." [54, at 2.] Second, he contends that this evidence is improper propensity evidence barred by Rule 404. Third, he argues that the video's portrayal of Defendant as "violent," a "gang member," and a "drug user" is unfairly

prejudicial in ways that vastly outweigh any probative value from this evidence.  [38, at 2.]  The Court addresses each argument in turn.

### 1. Authenticity

Authentication under Rule 901 requires the proponent of the evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901.  "Only a prima facie showing of genuineness is required; the task of deciding the evidence's true authenticity and probative value is left to the jury."  *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012).  Evidence can be authenticated through testimony from a "person with knowledge" or testimony about the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."  Fed. R. Evid. 901(b)(1), (4).  Circumstantial evidence can also be sufficient.  *Fluker*, 698 F.3d at 999.

The Government proposes two ways to authenticate this video.  Originally, it planned to offer testimony form a law enforcement officer who watched this video on YouTube, recognized Defendant, downloaded the video, and wrote a report on these events.  [49, at 17.] ████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Starting with the law enforcement officer, Defendant told officers during his post-arrest interview that he had been in a music video recorded about a month before his arrest in which guns were featured.  According to the Government, a law enforcement witness will testify that he saw this video on YouTube, and Defendant and the gun appear in the video.  At the time of this opinion, a copy of this video can still be found on YouTube.  Taken together, this direct and circumstantial evidence is sufficient to satisfy the prima facie showing of genuineness required for admissibility under Rule 901.  Courts have accepted similar authentication efforts of

YouTube videos.[1]  See *United States v. Broomfield*, 591 F. App'x 847, 851 (11th Cir. 2014) ("[T]he government made out a *prima facie* case that this YouTube video is what the government purports it to be—a video of [defendant] in possession of a firearm."); *Carucel Investments, L.P. v. Novatel Wireless, Inc.*, 2017 WL 1215838, at *19 (S.D. Cal. Apr. 3, 2017) (finding authentication of a YouTube video where "the video itself includes information showing Sprint as the source of the commercial, and [defendant's] former CTO * * * testified at his deposition about the existence of such a commercial").

Defendant's arguments to the contrary are unavailing.  Defendant does not argue or provide reasons why the Court should think that it is not him in the video or that the video is a fake.  Rather, he contends that the Government cannot properly authenticate this video because its proffered witness (1) was not present for the recording; (2) cannot testify about the circumstances under which it was filmed, such as where or when it was record; and (3) lacks personal knowledge about who operated the camera to film the video, what camera he or she used, or whether the video was altered after filming.  [67, at 4.]  While a witness with such knowledge *could* authenticate this video, Rule 901 does not *require* it.  See, *e.g.*, *United States v. Cejas*, 761 F.3d 717, 725 (7th Cir. 2014) (rejecting the argument that "Agent Wheele was not the proper person to establish the genuineness of the video because he watched a live feed of the video and did not personally witness the events the recording captured"); *Asociacion De Periodistas De Puerto Rico v. Mueller*, 680 F.3d 70, 79 (1st Cir. 2012) (rejecting authenticity challenge where plaintiff characterizes videos as "incomplete" and "extensively edited," but "make no claim of (or offer any reason to suspect) fraud or tampering, nor do they say that the

_____

[1] The Government did not provide a certification from a YouTube record custodian under Rule 902(11), and thus cannot rely on that authentication method.  See *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014) ("In establishing the admissibility of those exhibits, the government presented the certifications of records custodians of Facebook and Google, verifying that the Facebook pages and YouTube videos had been maintained as business records in the course of regularly conducted business activities.").

videos do not show actual footage of the incident in question"); *United States v. Damrah*, 412 F.3d 618, 628 (6th Cir. 2005) ("Evidence of how the tapes were made and handled prior to their seizure is not required."); *United States v. Clayton*, 643 F.2d 1071, 1074 (5th Cir. 1981) ("A witness qualifying a photograph need not be the photographer or see the picture taken; it is sufficient if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it."). In fact, evidence that is found by someone else is routinely authenticated.[2] See *United States v. White*, 639 F.3d 331, 337 (7th Cir. 2011) ("[A]t trial the government presented the demand note as a note recovered from [defendant's] rental vehicle. And the government presented evidence, in the form of testimony from the officer who recovered the note, establishing that that was exactly what the note was. Thus, the government properly authenticated the note."); *United States v. Edington*, 526 F. App'x 584, 591 (6th Cir. 2013) (holding authentication satisfied "by offering testimony from an investigator who was present when the video was retrieved and can describe the process used to retrieve it").

Defendant's argument about whether the Government can "prove" that the gun in the video is real rather than a toy [54, at 2] conflates the admissibility threshold under Rule 901 with issues of "true authenticity." *Fluker*, 698 F.3d at 999; see also *United States v. Salcido*, 506 F.3d 729, 733 (9th Cir. 2007) (explaining that where defendant "does not contest that * * * [the photographs] appear to be child pornography; rather, he asserts that the government failed to present evidence that the files depicted an actual minor," his argument was "more properly considered a challenge to the sufficiency of the evidence" than "as an issue of authenticity"). To satisfy Rule 901, the Government need only make a "prima facie showing of genuineness." *Fluker*, 698 F.3d at 999. It is up to the jury to decide ultimately whether the gun in the video is

---

[2] This is not a case where the Government created the recording. Cf. *United States v. Eberhart*, 467 F.3d 659, 666–67 (7th Cir. 2006) (recorded phone conversations).

real, Defendant is the person shown in the video, and the gun depicted is the same as the one recovered by police. Defendant is free to suggest other interpretations of this evidence, but his mere assertion that the gun depicted *might* be fake is insufficient to overcome this showing.

Typically, as is true in this case, there are "substantial differences in the facts and circumstances of [a] YouTube video and professional movies." *United States v. Johnson*, 2014 WL 241927, at *4 (E.D. Wis. Jan. 22, 2014) ("It is simply unreasonable to conclude that, because the movie industry employs substantial resources to obtain realistic props, a homemade video posted to YouTube must also use prop weapons."). Defendant's video appears to have been filmed in one room on a shaky camera and employs minimal graphics and editing. "Given the production value of the video, which appears to have been filmed on an iPhone or similar widely-available camera (not with a professional camera) and which also appears to have been shot [in someone's living room] (not on a professional set), it is reasonable for a viewer to conclude that no expense was taken to obtain realistic prop guns." *Id.* The visual elements of the video, its minimal production quality, and the manner in which people hold the gun in the video (suggesting it possesses weight and is not merely hollowed-out plastic) all support the Government's prima facie showing that the video depicts a real gun. Of course, Defendant is free to try his argument that the video depicts is a toy gun with the jury.[3]

Likewise, this case is not like *Griffin v. Bell*, 694 F.3d 817 (7th Cir. 2012), in which the Seventh Circuit affirmed the trial court's exclusion of a video and related still photos. In *Griffin*, one of the plaintiff's friends shot a two minute video of a physical altercation involving plaintiff,

---

[3] Defendant's argument that he mentioned music videos to police, but he did not "confirm[] the existence of, or that he appeared in, the *particular* video that the government seeks to introduce," is unpersuasive. [67, at 6 (emphasis added).] Defendant's post-statement that he appeared in a music video shortly before his arrest in which a gun was shown is circumstantial evidence supporting the authenticity of a music video shot three months before his arrest in which he is seen holding a gun. The Government does not need Defendant to affirmatively authenticate the video as the specific one he referenced in his post-arrest statements under Rule 901.

yet this video did not show the beginning of the fight and other parts of the fight were not visible, meaning that the video "showed only parts of the scuffle that appeared favorable to [plaintiff]." *Id.* at 820. The district court excluded the video because the person who recorded it could not be found and the video's selective presentation made it unfairly prejudicial. On appeal, plaintiff contended that he could authenticate it, but the Seventh Circuit disagreed. In this case, "[t]here were many valid reasons to call into question the authenticity of the video and still photographs, and many questions about the video that could be answered only by the student who produced the recording." *Id.* at 827. Because plaintiff "could not say how the video was made, or whether it had ever been altered," he was not a "witness with knowledge" under Rule 901(b)(1).

Here, allegations that this music video was edited have nothing to do with its authenticity. This is not a video of Plaintiff's arrest—the incident at the heart of this trial. Issues related to the natural sequence of images in the music video, the videographer's perspective, and whether he or she could alter or omit any other details based on the type of camera used are irrelevant to the main question of whether this is a video from YouTube of Defendant holding a gun. In other words, whether the video was selectively edited has little bearing on whether the images are what the Government contends they are. Indeed, Defendant fails to explain what difference it makes to the video's authenticity in this case if it was shot with a smartphone or a camcorder. The Government can satisfy its burden under Rule 901 with the proffered law enforcement witness.

██████████████████████████████████████████████████████████     ███

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████



Defendant offers no argument that this witness's testimony is insufficient to authenticate the YouTube video under Rule 901. [78.] It plainly is. See Fed. R. Evid. 901(b)(1). In fact, this witness meets most, if not all, of Defendant's objections to the officer's testimony. Accordingly, whether in reliance on this witness or not, the Government has satisfied Rule 901.

### 2. Character Evidence

Under Rule 404(b) "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Said differently, evidence of a prior bad act offered to show a defendant's character cannot be used to show that defendant acted in conformity with that character trait in the instant offense. However, Rule 404(b) permits use of this prior act evidence for another purpose unrelated to a propensity for wrongdoing, including "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The proponent of the evidence must first show "that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *United States v. Gomez*, 763 F.3d 845, 860 (7th Cir. 2014). Although "[o]ther-act evidence need

not be excluded whenever a propensity inference can be drawn," its relevance to the permitted purpose "must be established through a chain of reasoning that does not rely on the forbidden [propensity] inference." *Gomez*, 763 F.3d at 860. District courts "should not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose." *Id.* at 856. Once this initial showing is made, the Court must assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice under Rule 403. *Id.* at 860. "The court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case." *Id.*

The Government's purpose for admitting this video is to show that Defendant had recent access to the same gun that was ultimately recovered by police on May 12, 2016. [48, at 5.] That inference is disconnected from any propensity-like character trait (*e.g.*, Defendant possessed a gun in the past, so was more likely to possess a gun on May 12). This evidence is directly relevant to rebut the defense that Defendant could not be the person who possessed the recovered gun. The Seventh Circuit has allowed admission of similar evidence in felon in possession cases "at least where the prior possession was recent and involved the same gun." *United States v. Miller*, 673 F.3d 688, 695 (7th Cir. 2012); *United States v. Stork*, 487 F. App'x 295, 297 (7th Cir. 2012) ("Testimony indicating that [defendant] recently had possessed the same gun found in the van was evidence of his charged crime, not propensity evidence."); *United States v. Canady*, 578 F.3d 665, 671 (7th Cir. 2009) ("So if the government could show that [defendant] used the same firearm shortly before the accident, that fact would also support a guilty verdict for [defendant's] illegal possession charge.").

The Seventh Circuit has also explained that different concerns are implicated when the gun possession is "further removed in time" or "the prior possession was of a different gun." *Miller*, 673 F.3d at 695. But those concerns do not apply here. The YouTube video was uploaded on February 18, 2016, and the Government alleges that the gun possessed and recovered on May 12 was the same gun. *Id.* ("Here, the witness testified that [defendant] possessed a particular gun two months before the date he was charged with being in possession of the same gun—found under his mattress."). Evidence that Defendant had access to the same gun he is charged with possessing does not rely on an inference about Defendant's propensity to possess firearms. As in *Miller*, this video showing Defendant's "recent possession of the same gun was directly relevant evidence of the charged crime, not propensity evidence." *Id.*

Defendant argues that *Miller* is inapposite because the prior act was attested to by an eyewitness who "personally saw" the defendant with the same gun prior to his arrest, whereas here the Government is relying on an Internet video. [54, at 2.] That is certainly a difference. Defendant fails to explain, however, why that difference matters under Rule 404(b). *Miller*'s analysis does not turn on the specific form of the prior gun possession evidence (*e.g.*, video, photograph, letter, prior conviction, or eyewitness account). See *United States v. Cassell*, 292 F.3d 788, 790–91 (D.C. Cir. 2002) (allowing evidence under Rule 404(b) of defendant's prior conviction involving the same gun and that his car had been recently impounded and the same gun "fell from underneath the rear bumper"); *Miller*, 673 F.3d at 695 (citing *Cassell* favorably). Indeed, it is hard to see how the fact that the Government has a video of Defendant possessing this gun makes this evidence more likely to rest on a propensity inference than testimony from a live witness that Defendant possessed the gun. The form of the evidence does not matter under

the text of Rule 404 either. *Miller* is squarely on point and confirms that Rule 404(b) is not a barrier to the admission of this video and its related stills.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

Again, the Government's purpose is to show that Defendant had access to the gun that he possessed in the instant offense. This access did not depend on ownership rights and is not ruled out because someone else ultimately owns the gun. ██████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████  The Government does not have to prove that the guns are, in fact, the same beyond a reasonable doubt as a threshold to admissibility. Accord *United States v. McGlothin*, 705 F.3d 1254, 1259 n.7, 1265–66 (10th Cir. 2013) (affirming admission of prior gun incident under Rule

404(b) where witness from the prior incident "testified [that] the Glock did not 'appear to be different in any way' from the pistol [defendant] used to assault her," but she "could not positively say it was the same gun" because "no reasonable juror would have perceived the purpose of [witness's] testimony for anything other than demonstrating [defendant] possessed the Glock during a time temporally proximate to the possession alleged in the indictment" and thus "[t]his testimony then does not have anything to do with propensity"). The Government need only show that this evidence is admitted for a permissible, non-propensity purpose under Rule 404(b). It has done so. See *Miller*, 673 F.3d at 695.

### 3. Rule 403 Balancing

Consistent with *Gomez*, the Court must also evaluate this evidence under Rule 403. There are a number of potential issues to balance with this evidence. The Government's sole claimed purpose for admitting this evidence is to show Defendant's access to the same weapon that he was later charged with possessing. The lyrics of the song and the words "King Coke" that flash on the screen have nothing to do that purpose. The fact that the video depicts seven or eight men—some of whom are wearing face masks—jumping and flashing what may be gang signs at the camera also is not relevant to whether Defendant had access to the recovered gun. Moreover, the video gives roughly equal time to a distinct larger semi-automatic rifle, which could enable the jury to draw an impermissible propensity inference. See *Miller*, 673 F.3d at 695 ("If the prior possession was of a different gun, then its value as direct or circumstantial evidence of the charged possession drops and the likelihood that it is being used to show propensity to possess guns rises considerably."). In short, much of this video is irrelevant to the Government's purpose and likely to be unfairly prejudicial and confuse the issues that the jury must decide.

The same cannot be said of the still-photographs extracted from the video. Two of those pictures show Defendant holding this smaller, silver-colored high-polish pistol. The third provides a close-up of the same gun when it is held by someone else. These pictures avoid the most inflammatory and irrelevant features of the video related to drugs, gangs, or aggressive and potentially intimidating conduct and instead focus in on this evidence's probative value: Defendant's access to this gun and the characteristics that the Government believes show it is the same gun recovered by police. Thus, these pictures are much more tailored to the Government's purpose for offering this evidence, avoid the potential for propensity inferences related to showing the other gun, and present significantly less unfair prejudice (if any) than the full video. Thus, the Court denies the Government's request to admit the entire YouTube video, but grants its request to admit photograph stills extracted from the video[4] as well as testimony regarding the similarities between the gun in the video and the gun recovered by police (which is unchallenged by Defendant).[5]

### B.    Defendant's Post-Arrest Statements (Motion 2)

The Government seeks to admit statements that Defendant made during his post-arrest interviews with police, but preclude Defendant from admitting his own statements unless they qualify under an applicable hearsay exception (or exemption) or can qualify for admission under

---

[4] The Government's motion contains only three video still-frames [48, at 3–4]. If the Government plans to use any other still-frames from the video, it must make a request to do so and submit copies of those pictures for review by Defendant and the Court as soon as possible and well in advance of trial.

[5] The Government has also proposed submitting short video clips without audio of the scenes in which Defendant can be seen holding the gun. [77, at 4.] Even assuming these clips could be edited in a way that avoids the other unfairly prejudicial aspects of the video, the Court does not believe this would aid juror comprehension. The video is fast moving and the camera moves rapidly back and forth among subjects. One- or two-second video clips are likely to be too confusing to follow, and the Court declines to permit this form of evidence under its trial management authority pursuant to Rule 611.

the doctrine of completeness. [48, at 9–10.] Defendant does not oppose this request [54, at 3]. Therefore, subject to these conditions, the Government's motion *in limine* is granted.

### C. Defendant's Prior Convictions (Motion 3)

The Government seeks to admit Defendant's two prior felony convictions under Rule 609(a): (1) an August 28, 2009 conviction for manufacturing/delivery of 2.5 to 10 grams of cannabis, for which he received a one-year prison sentence; and (2) an August 31, 2012 conviction for residential burglary, for which he received a four-year prison sentence.[6] [48, at 10.] The parties have attempted to reach a stipulation that Defendant has been convicted of a crime punishable by imprisonment of more than 1 year, which is an element of his present charge. [41, at 1.] However, the Government seeks to admit additional information about his prior felony (including the title, date, and disposition of the charge) in the event that Defendant testifies. [48, at 10–11.] Defendant requests that this information be "sanitized" even further.

Rule 609(a) provides that "to attack[] a witness's character for truthfulness by evidence of a criminal conviction," evidence of a crime punishable by more than a year's imprisonment "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B). The Seventh Circuit has employed a five-part test "to guide the district court in the exercise of its discretion in determining whether the probative value of a conviction outweighs its prejudicial effect: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004).

---

[6] Defendant also has two misdemeanor convictions for street gang contact while on parole in 2014 and one misdemeanor conviction for reckless conduct in 2010. [41, at 1.]

On balance, these five factors weigh in favor of admitting the fact, but not the nature, of Defendant's prior felony convictions. See *United States v. Nururdin*, 8 F.3d 1187, 1191 (7th Cir. 1993) (affirming admission of four prior felony convictions for robbery, attempted robbery, and aggravated battery under Rule 609(a)(1) where defendant was charged being a felon in possession of a handgun). Convictions related to burglary and cannabis delivery have a modest impeachment value. See *Smith v. Nurse*, 2016 WL 4539698, at *3 (N.D. Ill. Aug. 31, 2016) (explaining that burglary conviction has "some, but not strong, impeachment value"); *United States v. Galati*, 230 F.3d 254, 262 n.5 (7th Cir. 2000) ("A person's past drug possession does not necessarily implicate dishonesty and this court has rejected the argument that 'people who have used drugs are more likely to tell lies.'"). Neither crime directly involves dishonesty, fraud, or issues of truthfulness. Both convictions fall within the ten-year period established by Rule 609(b), although the eight-year-old cannabis conviction is closer to that guidepost. See *United States v. Grant*, 396 F.3d 906, 909–10 (7th Cir. 2005) (holding that impeachment with eight year old conviction for drug crime was proper). Defendant has not stayed out of trouble following either felony conviction, as both convictions were followed by misdemeanor convictions and the burglary felony conviction followed the cannabis conviction. Neither crime is similar to Defendant's felon in possession charge—a point that weighs in favor of admission. See *Montgomery*, 390 F.3d at 1015. Finally, Defendant may be the only witness called by the defense, which means that his testimony and his credibility will be central issues. Considering these factors together, the Court concludes that evidence of Defendant's felony convictions is admissible under Rule 609(a)(1).

The main issue, however, is how much of this evidence will be admitted. The Government maintains that the "law of this circuit" is that it "may elicit evidence of prior

convictions in this circumstance including the title, date, and disposition of each offense." [66, at 5.] The law is not so uniform. See *Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627 (7th Cir. 2009) ("[C]ases do permit the 'sanitization' of prior-crimes evidence used to impeach, but they mean by this just concealing the nature or name of the crime"). While the Seventh Circuit permits a court to admit these details, it does not require it.[7] See *Stanbridge v. Mitchell*, 2012 WL 1853483, at *2 (C.D. Ill. May 21, 2012) ("The Court is aware that the Seventh Circuit has affirmed cases allowing the introduction of the crime charged, date, and disposition. However, those cases do not mandate the introduction of this information." (internal citation omitted)). Indeed, this Court and many other district courts in this circuit regularly sanitize convictions to exclude information related to the title, date, and/or length of conviction.[8] The Government

---

[7] In *United States v. Lewis*, 641 F.3d 773 (7th Cir. 2011), and *United States v. Smith*, 454 F.3d 707 (7th Cir. 2006), the Seventh Circuit considered whether the district court abused its discretion by allowing the government to identify the particular felony, date, and its disposition of a prior conviction under Rule 609. In both cases, the Seventh Circuit found no abuse of discretion. Neither case precludes a court as a matter of law from further sanitizing convictions, as the Government seems to suggest [66, at 5].

[8] Accord *Owens v. Ellison*, 2017 WL 1151046, at *4 (N.D. Ill. Mar. 28, 2017) ("The Government's impeachment of Defendant shall be limited to the fact that Defendant is a convicted felon."); *Jones v. City of Chi.*, 2017 WL 413613, at *10 (N.D. Ill. Jan. 31, 2017) ("Defendants may impeach [plaintiff] by introducing the fact that he is a convicted felon and his date of conviction, but they may not reference his crime of conviction, the facts underlying the conviction, or the length of his sentence, as the jury could infer the seriousness of his crime from the length of his sentence."); *Pierce v. Ruiz*, 2016 WL 5912890, at *3 (N.D. Ill. Oct. 11, 2016) ("Defendants may introduce evidence stating that [plaintiff] was convicted of two felonies and provide the dates of those convictions. The Defendants may not reveal the nature of the crimes underlying the convictions."); *Smith*, 2016 WL 4539698, at *4 ("Defendant's impeachment of Plaintiff shall be limited to the fact that Plaintiff is a convicted felon."); *Tatum v. Clarke*, 2015 WL 6392609, at *3 (E.D. Wis. Oct. 22, 2015) ("In this case, the necessary 'sanitization' must include (1) the nature and name of the crimes (murder/first degree homicide), and (2) the sentence imposed (life without the possibility of extended supervision)."); *Buchanan v. McCann*, 2012 WL 1987917, at *2 (N.D. Ill. June 4, 2012) ("In this case, the necessary 'sanitization' must include (1) the nature and name of the crime (murder), (2) the date of the conviction (2004), and (3) the sentence imposed (life). The latter two data points must be kept from the jurors lest they lead jurors to draw prejudicial inferences about the seriousness of the crime. What remains to be elicited—or stipulated—is the bare fact that Plaintiff is a convicted felon."); *Anderson v. City of Chi.*, 2010 WL 4928875, at *3 (N.D. Ill. Nov. 30, 2010) (allowing party to refer to prior conviction as "felony conviction" but barring reference to the name or nature of the conviction). The Seventh Circuit has noted that the same test and animating principles under Rule 609(a) apply in both criminal and civil cases. See *United States v. Smith*, 454 F.3d 707, 716 (7th Cir. 2006) ("*Campbell* was a civil case but the rule applies in criminal cases as well").

offers no argument, for example, as to how the fact that Defendant received a four-year sentence for residential burglary (rather than a one year sentence) bears on his veracity.  See *Jones v. Sheahan*, 2003 WL 21654279, at *2 (N.D. Ill. July 14, 2003) ("Admitting evidence of Mr. Jones's murder conviction might lead a jury to deny Mr. Jones an award 'not because it doubts its veracity, but because it is appalled by his prior conduct that has nothing to do with the events in question.  That is precisely the kind of unfair prejudice that Rule 403 seeks to prevent.'").

Therefore, the Government may admit that Defendant has two prior felony convictions, one from August 28, 2009 and one from August 31, 2012.  The name of the felony and the length of the sentence beyond one year should not be elicited.  If the Government believes that Defendant has opened the door to eliciting additional details about these prior convictions, see *United States v. White*, 222 F.3d 363, 370 (7th Cir. 2000), the Government should seek the Court's prior approval before inquiring into these details.

### D.     Missing Witnesses (Motion 4)

The Government moves to preclude Defendant from making arguments or introducing evidence related to missing witnesses who are not under the control of either side.  [48, at 12.] Defendant does not oppose this motion [54, at 4] (which is the subject of Defendant's similar motion [42]), and the Government's motion is therefore granted.

### E.     Discovery-Related Comments (Motion 5)

The Government moves preclude Defendant from "requesting discovery from witnesses or opposing counsel, moving for such discovery, or otherwise commenting on discovery matters in the presence of the jury." [48, at 13.]  Defendant does not object to this motion [54, at 4], and the motion is granted.

### F.       Undisclosed Affirmative Defenses (Motion 6)

The Government moves to preclude Defendant from presenting evidence or arguments in support of undisclosed affirmative defenses, such as the existence of an alibi, unavailability, entrapment, necessity, duress, or coercion.  [48, at 14–15.]  Defendant does not object to this request, and notes that he will continue to comply with the requirements of the Federal Rules of Criminal Procedure [54, at 4].  With that understanding, the Court grants the Government's motion *in limine*.

### G.       Jury Nullification (Motion 7)

The Government moves to preclude Defendant from "arguing or presenting evidence designed to elicit jury nullification."  [48, at 15.]  Defendant does not object, "provided that this motion does not preclude him from testifying by way of background that he lives with his fiancée and his five-year-old daughter."  [54, at 4.]  The Government does not respond to this proviso [see 66], and so the Court grants the Government's motion *in limine* with the understanding that Defendant is not precluded from offering this testimony about his family.

### H.       Police Misconduct (Motion 8)

The Government moves to preclude Defendant from "making arguments or statements that include references to general police misconduct, racism in the Chicago Police Department, acts of police violence, or the recent pattern and practice investigation of the Chicago Police Department."  [48, at 19.]  The Government also moves to exclude arguments and evidence about "the mental states, subjective intentions, or motivations of the arresting officers."  *Id.* Defendant states that he does not intend to argue or elicit testimony "about police misconduct *in general*" [54, at 5], making that portion of the Government's motion unopposed.  He does, however, intend to argue that the arresting officers "engaged in misconduct in their actions

against" him both prior to and on the day of his arrest, that the officers "had no probable cause to arrest him," and otherwise question their "animus toward or bias against" Defendant. *Id.*

Testimony regarding generalize police misconduct, racism, police violence, or Chicago Police Department internal investigations is irrelevant and the motion *in limine* barring such evidence will be granted. The motion is also granted to preclude inquiries into the arresting officer's mental states or motivations. See *United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994); *United States v. House*, 2015 WL 1058019, at *2 (N.D. Ill. Mar. 6, 2015). Defendant, however, is permitted to discuss the facts and circumstances surrounding his arrest, and he is not required to disclose to the Government before testifying any specific aspects of the events of May 12, 2016, that he believes rise to the level of misconduct. See *United States v. Boender*, 2010 WL 811296, at *4 (N.D. Ill. Mar. 3, 2010) ("[A]n accused may introduce evidence that an officer has committed misconduct where it can be used to impeach a witness."). Defendant is also not precluded from inquiring into his arresting officers' animus or bias given that "an accused is generally allowed to impeach a witness's credibility through, among other things, demonstrating that the witness was biased." *Id.* (collecting cases). To the extent that the Government's motion seeks to preclude such testimony in its entirety, the motion is denied.

Defendant will not be permitted to testify "that the officers had no probable cause to arrest him." [54, at 5] Probable cause is a legal determination, and "lay testimony offering a legal conclusion is inadmissible because it is not helpful to the jury." *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009); see also *Martin v. Fort Wayne Police Dep't*, 2014 WL 1047804, at *9 (N.D. Ind. Mar. 18, 2014) ("[T]he only legal conclusions contained in this paragraph are that defendants illegally searched plaintiff's vehicle without probable cause. The court will disregard plaintiff's assertion that the search was done illegally and without probable cause").

Experts under Rule 702 are routinely excluded from offering opinions about the existence of probable cause, and a lay witness like a criminal defendant is no better qualified to offer such an opinion.[9]  To the extent that Defendant would like to discuss misconduct involving interactions between the arresting officers and Defendant "prior to * * * the day of his arrest" [54, at 5], he should make an offer of proof as to what that evidence will be before eliciting that testimony, and the Court will rule on his request at that time.  The same goes for any testimony from Defendant or his witnesses regarding alleged misconduct or "animus" between Defendant and any *other* officers apart from the two arresting officers.  The Court cannot rule on this evidence's relevance and admissibility under Rules 403, 404, and 608 in the abstract.

### I.        Reasonable Doubt (Motion 9)

The Government moves to preclude Defendant or his attorney from "explaining or attempting to define reasonable doubt."  [48, at 20.]  Defendant does not object to this request [54, at 6], and the motion is granted.

### III.       Defendant's Motions in Limine

#### A.        Gang Affiliation (Motion 1)

Defendant moves to exclude any evidence or argument about his alleged gang affiliation under Rules 401 and 403.  [35.]  The Government does not plan to introduce evidence on this subject in its case-in-chief, but may seek to introduce this evidence in response to Defendant's testimony and will seek the Court's leave before doing so.  [49, at 1.]  Specifically, the

---

[9] See *Jimenez v. City of Chi.*, 732 F.3d 710, 722 (7th Cir. 2013); *Cameron v. City of N.Y.*, 598 F.3d 50, 62 (2d Cir. 2010);  *Estes v. Moore*, 993 F.2d 161, 163 (8th Cir. 1993); *Sanders v. City of Chi. Heights*, 2016 WL 4417257, at *6 (N.D. Ill. Aug. 19, 2016); *Washington v. City of Waldo, Fla.*, 2016 WL 3545909, at *4 (N.D. Fla. Mar. 1, 2016); *Brown v. Dirga*, 2016 WL 2743486, at *2 (D. Conn. May 11, 2016); *Stern v. Shammas*, 2015 WL 4530473, at *3 (E.D.N.Y. July 27, 2015); *Manton v. Strain*, 2010 WL 4364480, at *2 (E.D. La. Oct. 21, 2010); *Rogers v. Bonnett*, 2009 WL 2461820, at *3 (W.D. Tex. Aug. 11, 2009); *Tunell v. City of Bella Villa*, 2008 WL 2401575, at *2 (E.D. Mo. June 10, 2008); *Halcomb v. Wash. Metro. Area Transit Auth.*, 526 F. Supp. 2d 24, 27 (D.D.C. 2007).

Government may offer testimony that Defendant is a member of the Latin Kings and was in conflict with a rival gang in the area at the time of his arrest. *Id.* at 3. The Government intends to use this evidence to "establish both that it was the Defendant who carried the gun with him that day (and threw it into the yard) and the Defendant's motive for carrying the gun." *Id.*

"Evidence of gang affiliation must be handled with care, because 'a jury is likely to associate gangs with criminal activity and deviant behavior,' raising the "specter of guilt by association or a verdict influenced by emotion." *United States v. Molton*, 743 F.3d 479, 482 (7th Cir. 2014) (citations omitted). This evidence "can taint a defendant in the eyes of the jury" because it may "attach a propensity for committing crimes to defendants who are affiliated with gangs" or "generally arouse negative connotations and often invoke images of criminal activity and deviant behavior." *Montgomery*, 390 F.3d at 1018 (citations and internal quotation marks omitted). Therefore, the Court will not admit this evidence lightly and without satisfying itself that this evidence complies with Rule 403.

Gang affiliation evidence can be admitted under appropriate circumstances to show motive, even in gun possession cases. See, *e.g.*, *Molton*, 743 F.3d at 483; *Montgomery*, 390 F.3d at 1018; *United States v. Butler*, 71 F.3d 243, 251–52 (7th Cir. 1995); *United States v. Lloyd*, 71 F.3d 1256, 1265–66 (7th Cir. 1995).[10] The Government believes that Defendant's alleged gang affiliation would admissible if Defendant testifies "that he has no knowledge of the recovered pistol, that he did not arrive on the corner until after the gun was thrown and CPD confused him for the person who threw the gun, that no one he was with that day at or just prior to the time he

---

[10] Defendant seeks to distinguish *Butler* and *Lloyd* on the grounds that the defendant in *Butler* held positions of "gang security guard" while the defendant in *Lloyd* faced assassination attempts and used gang security and firearms for protection. [67, at 2.] The fact that Defendant may not have the identical motive as these defendants does not meaningfully differentiate these cases. If the Government offers evidence showing that Defendant was in a gang, in a dispute with a rival gang over territory, and had reason to believe that this dispute could turn violent, it would explain why he possessed a firearm where he was arrested. Such evidence could be relevant depending on how Defendant testifies.

was arrested was in possession of the recovered pistol, or that someone else possessed the recovered pistol." [49, at 4.] These examples of what the Government believes would open the door to gang affiliation evidence sweep far too broadly. In fact, most of these topics are not rebutted by gang affiliation evidence at all. For example, the fact that Defendant is in a gang does not make it more likely that he knows about this particular gun (and if it does, the Government does not say why). Likewise, gang membership does not make it more likely that he arrived at the corner *before* the gun was thrown. The notion that Defendant's testimony that someone else possessed the gun is rebutted by evidence that he is in a gang also strikes the Court as propensity use or, at a minimum, guilt by association.[11] On the other hand, testimony that Defendant would have no reason to possess a gun plainly opens the door to this kind of evidence.

The Court will not endeavor to lay out every permutation of Defendant's testimony that could make gang affiliation evidence relevant, but Defendant's mere denial that it was his gun falls short opening the door to this evidence. Therefore, the Court will defer ruling on Defendant's motion [35] until after Defendant testifies (assuming he does) and the Government specifies which testimony it believes has opened the door to gang affiliation evidence.

## B. Fingerprint Expert (Motion 2)

Defendant moves to exclude the Government's proposed fingerprint expert [36], who plans to testify

> [R]egarding the process by which latent fingerprints are detected on objects, how a person can touch and handle an object without leaving any latent fingerprints, and the rarity of positive findings for usable latent prints on firearms. This expert

---

[11] The Government represents that Defendant "and the two individuals" he was with on May 12 were all members of the same gang. [49, at 2.] As a result, the Government must explain why admitting evidence of gang affiliation would make it more likely that *Defendant* "as opposed to someone else, was the one in possession of the firearm." *Id.* at 5. If all three people are members of the same gang involved in the same conflict with a rival gang in the same area during the same time period, the Government will need to explain why admission of gang affiliation evidence would differentiate among them.

may also testify about the examination of the firearm described in the indictment as well as the negative print finding by the Chicago Police Department.

[49, at 8.]

Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony. See *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009). Rule 702 permits the admission of expert opinion testimony if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Trial courts are obligated to act as gatekeepers to ensure that the expert testimony is both relevant and reliable. See *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147–49 (1999); *Daubert*, 509 U.S. at 589. To determine relevance, the proponent must show that the expert's "reasoning or methodology properly can be applied to the facts in issue," and "the testimony will assist the trier of fact with its analysis of any of the issues involved in the case." *Daubert*, 509 U.S. at 593; *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000); Fed. R. Evid. 702. To determine reliability, the proponent must show that the expert's testimony is based on "sufficient facts or data," that it is "the product of reliable principles and methods," and that those methods have been "reliably applied * * * to the facts of the case." Fed. R. Evid. 702. District courts have "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *Pansier*, 576 F.3d at 737.

Defendant argues that this fingerprint testimony from the Government's expert is irrelevant, prejudicial, wastes time, invades the province of the jury, and is improper under Rule 702. Just last year, the Seventh Circuit rejected these *same* arguments regarding this *same* expert offering this *same* testimony. See *United States v. Common*, 818 F.3d 323 (7th Cir. 2016); see also *United States v. Glover*, 479 F.3d 511, 517–19 (7th Cir. 2007). In *Common*, the Seventh

Circuit explained that "statistical evidence about how often fingerprints are recovered is relevant because it helps the jury decide how much weight to give the fact that no prints were found. In other words, the statistical evidence helps explain the absence of prints." 818 F.3d at 330. The fact that there are no prints on a gun "does not necessarily mean that [a defendant] never touched the gun or that somebody wiped the prints off the gun," but could just "due to the fact that fingerprints are difficult to recover from firearms." *Id.* Moreover, "there is a common misconception about the prevalence of fingerprint evidence," *id.*, which means that an expert's specialized knowledge about "the rarity of positive findings for usable latent prints on firearms" [49, at 8] would helpful to the jury in understanding this evidence, Fed R. Evid. 702(a). For that reason, the Seventh Circuit saw no error in allowing the expert to testify that it 'it was 'extremely uncommon' to recover fingerprints from firearms and that he had only recovered fingerprints from 30 out of 800 firearms." *Common*, 818 F.3d at 330.

Furthermore, the Seventh Circuit reiterated that this testimony was not "unfairly prejudicial," notwithstanding the fact that the defendant in *Common* was also charged with being a felon in possession of a firearm. 818 F.3d at 331. The Seventh Circuit even distinguished the same dicta from *United States v. Paladino*, 401 F.3d 471, 478 (7th Cir. 2005), that Defendant cites in his motion [36, at 2]. See *Common*, 818 F.3d at 330–31; *Glover*, 479 F.3d at 518 ("This dicta [from *Paladino*] could be read to suggest that testimony like [expert's] has limited probative value. In this case, however, the testimony helped rebut [defendant's] argument that the lack of fingerprints indicated innocence. It assisted the jury in understanding that, despite what they might see on popular television crime shows, certain objects are not particularly conducive to finding prints. [Defendant] did not have an opportunity to wipe his prints from the

gun, nor was there evidence that he wore gloves. Without [expert's] testimony, the jury may not have understood how [defendant] could have possessed the weapon without leaving prints.").

Defendant offers no response to this case law. [67, at 3.] Consistent with *Common* and *Glover*, the Government's fingerprint expert is highly relevant to explain why no fingerprints were recovered from the firearm at issue in this case and will not waste time or unfairly prejudice Defendant. This testimony is based on "scientific, technical, or other specialized knowledge" and will assist the jury to make sense of the absence of fingerprints on this weapon. Fed. R. Evid. 702(a). Defendant fails to articulate how this testimony invades the jury's province or weighs evidence for them [36, at 3]. To the contrary, this testimony arms the jury with sufficient information about what inferences are reasonable to draw from the facts rather than allowing the jury to speculate based on what they may have seen on television. Defendant also fails to substantiate why he believes this opinion "will not be based on sufficient facts or data or the product of reliable principles and methods" in light of *Common* and *Glover*'s admission of expert testimony on this same subject. *Id.* at 4. Because Defendant fails to support this objection or distinguish this case from settled circuit law, the Court sees no reason to exclude this expert, hold a *Daubert* hearing, or permit Defendant to voir dire this expert outside the presence of the jury. Defendant's motion *in limine* [36] is denied.

### C.     Alcohol Tobacco Firearms and Explosives Expert (Motion 3)

Defendant requested to *voir dire* Bureau of Alcohol Tobacco Firearms and Explosives ("ATF") Agent Ryan McBride outside the presence of the jury [37]. Since filing that motion, the parties have reached a stipulation that the recovered firearm was shipped in and traveled in interstate commerce prior to May 12, 2016 [49, at 14–15]. On reply, Defendant withdrew the motion and states it is moot [67, at 3]. Accordingly, the Court strikes the motion [37] as moot.

### D.       Rap Videos (Motion 4)

Defendant moves to bar the Government from introducing "certain rap music videos at trial." [38.]  As discussed above, the Government seeks to introduce only the February 18, 2016 YouTube video depicting Defendant [49, at 15].  Thus, to the extent the motion seeks to exclude other videos, it is not opposed by the Government and the motion [38] is therefore granted.  For the reasons previously stated, the motion [38] is granted with respect to the entire February 18, 2016 YouTube video, but denied with respect to the still-frames offered by the Government from the video.

### E.       Incarceration (Motion 5)

Defendant moves to exclude the fact that he has "spent almost one year in pretrial custody pending the outcome of this case." [39, at 1.]  The Government represents that it "does not presently intend to introduce any evidence of incarceration in this case," but such evidence could become necessary at trial if Defendant testifies.  [49, at 21.]  The Government does not explain how Defendant could open the door to this testimony (*id.*) or how its probative value would outweigh its unfair prejudice.  See *United States v. Rainone*, 2013 WL 389004, at *5 (N.D. Ill. Jan. 31, 2013).  Because the Government does not provide a specific reason for keeping this motion open, the Court will grant Defendant's motion [39].  Should some unforeseen circumstance present itself at trial that could make this evidence relevant and admissible, the Government can always request reconsideration of this ruling.

### F.       Makeup To Cover Tattoos (Motion 6)

Defendant requests that he be permitted to apply flesh colored makeup to cover his tattoos during trial, including two teardrop tattoos below his left eye and teardrop tattoos on his hands.  [40, at 1.]  Defendant argues that this evidence is impermissible under Rule 404(b),

unfairly prejudicial, and could be used to suggest a gang affiliation. *Id.* at 1–2. The Government opposes this request, arguing that an unaltered view of Defendant's face is relevant to allowing the jury to identify him in the February 18, 2016 YouTube video. [49, at 22.] The Government also argues that Defendant overstates the prejudice from these tattoos.

The Court will leave this issue up to Defendant. If Defendant plans to contest whether it is him in the photo stills from the February 2016 YouTube video, he cannot cover his facial tattoos with make-up. If he plans to concede that he is the person in the photo stills from February 2016 YouTube video, then his identity will not be at issue and the Court sees no prejudice to the Government in allowing him to use facial makeup.[12] In the event that Defendant chooses the first option, the prejudice will not outweigh the probative value gained by allowing the jury to judge the Government's identification of Defendant for themselves. There is no propensity inference here since this evidence goes directly to whether the person in court is the same person in the picture. In the event that Defendant testifies, he can explain what his tattoos mean for the jury. The Court will also ask the jury during voir dire the parties' proffered question [51, at 4; 75, at 1] concerning whether Defendant's tattoos would cause them to make assumptions about Defendant in a way that prevents them from being fair and impartial.

### G.     Criminal History (Motion 7)

Defendant moves to exclude evidence regarding his criminal history beyond the fact that he has been convicted of a crime punishable by imprisonment of more than a year. [41.] The Government represents that it only plans to admit his two prior felony convictions under Rule 609(a) in the event that he testifies. [49, at 23.] The Court has already ruled that the Government can elicit testimony that Defendant has two prior felony convictions, one from

---

[12] Defendant represents that his tattoos were not used to identify him in connection with is arrest. [40, at 2.] The Government does not contest this point, and the Court's ruling is based on that understanding.

August 28, 2009 and one from August 31, 2012, and that aspect of Defendant's motion [41] is denied.

Defendant also moves to exclude reference to his three prior misdemeanor convictions for street gang contact while on parole and reckless conduct as well as his prior arrests that have not resulted in convictions.  The Government does not oppose that that request "unless Defendant opens the door."  [49, at 23 n.9.]  "The law is clear that a defendant's prior arrest record is inadmissible."  *Anderson v. Sternes*, 243 F.3d 1049, 1054 (7th Cir. 2001).  Since these misdemeanors are (by definition) crimes punishable by less than a year imprisonment and do not pertain to dishonest acts or false statements, they are not admissible under Rule 609(a).  These misdemeanors are otherwise irrelevant and unfairly prejudicial.  Because the Government does not explain how Defendant could open the door to this kind of testimony, the Court will grant Defendant's motion [39].  If the Government believes that Defendant's testimony has somehow opened the door to his arrest record, it can make that request at trial.

### H.    Missing Witnesses (Motion 8)

Like the Government, Defendant moves to preclude argument about missing witnesses equally available to both parties at trial.  [42.]  The Government agrees that this motion should be granted [49, at 24], and Defendant's motion [42] is therefore granted.

### I.    Street Clothes and Unshackled at Trial (Motion 9)

Defendant seeks permission to wear street clothes and be unshackled during the trial. [43.]  The Government does not object to this motion [49, at 24], and the motion [43] is granted.

### J.    Exclude Witnesses (Motion 10)

Defendant moves to exclude any non-party witness who may be called to testify for the duration of the trial pursuant to Rule 615.  [44.]  The Government objects to the motion only to

the extent that it would apply to the Government's case agent, ATF Special Agent David LaMonte [49, at 25]. Defendant does not oppose that modification [67, at 9]. Accordingly, Defendant's motion [44] is granted except with respect to ATF Special Agent David LaMonte.

**K.      Results of Test Firing and Loaded Gun (Motion 11)**

Defendant moves to bar evidence of the recovered firearm's testing and that the firearm was loaded on the day of Defendant's arrest on the grounds that this evidence is irrelevant to the charge, is unfairly prejudicial, and confuses the issues. [45.] The Government opposes the motion, arguing that the fact that Defendant threw a loaded operable gun that was recovered by the police is relevant to understanding the background of the offense and is not unfairly prejudicial under Rule 403. [49, at 26–28.]

The Court agrees with the Government. A fact does not need to be an element of a charge to be a "fact of consequence" under Rule 401. See *United States v. Boros*, 668 F.3d 901, 908 (7th Cir. 2012) ("[Defendant] is incorrect in his assertion that evidence is only relevant if it relates to an element of the offense."). "[E]vidence is relevant when it provides background information about the defendant or the offenses charged." *Id.*; accord Fed. R. Evid. 401 advisory committee's note ("Evidence which is essentially background * * * is universally offered and admitted as an aid to understanding."). The context in which a crime occurred—including the nature of the firearm recovered by police—qualifies as a fact of consequence in a felon in possession of a firearm charge under 18 U.S.C. 922(g). See *United States v. Byers*, 603 F.3d 503, 506 (8th Cir. 2010) ("In felon-in-possession cases, we have permitted the introduction of evidence that provides the context in which the crime occurred, including events immediately preceding the defendant's arrest and the circumstances of the arrest itself. The characteristics of the ammunition and the magazine provided the jury with the context in which this crime

occurred."). Thus, the fact that the firearm was loaded and operable, thrown into a stranger's yard, and later disabled by police once recovered provides both relevant context to the nature of the charged crime and the efforts taken by police as part of their investigation to minimize the risks presented by this crime. Even assuming they are "ancillary matters" with "only marginal relevance," they still satisfy Rule 401's threshold. *Boros*, 668 F.3d at 908–09.

But this evidence must still survive balancing under Rule 403. The Court may exclude relevant evidence under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Defendant never explains how the fact that the recovered gun was loaded is *unfairly* prejudicial, let alone how telling the jury this fact would be so unfairly prejudicial (or confusing) that it would *substantially* outweigh the probative value of this evidence. [67, at 10.] Any difference in prejudice between telling a jury that police recovered a loaded gun versus an unloaded gun is difficult to discern. Both are prejudicial. Neither appears *unfairly* prejudicial. If Defendant believes there is a vast distinction between these scenarios and the jury's ability to rationally weigh the evidence after hearing one but not the other, he does not attempt to articulate it. Furthermore, Defendant's indictment charges him with possessing a "loaded" firearm [1], and Defendant does not argue that this language should be redacted. That means the gun's loaded status will already be before the jury, which diminishes any Rule 403 risks. Therefore, the Court denies Defendant's motion [45] to exclude evidence of the gun's operability and the fact that it was loaded when recovered by police.

L.    **Gun Violence (Motion 12)**

Defendant moves to bar the Government from "eliciting testimony or arguing generally about gun violence." [46.] The Government "does not intend" to elicit this kind of testimony, but requests that the Court reserve ruling until after Defendant testifies because such evidence may become relevant. [49, at 28.] The Court is disinclined to allow this kind of argument or testimony from the Government under Rule 403. Generalized gun violence is not relevant to any fact of consequence and presents the potential for the jury to improperly hold Defendant accountable for gun violence in Chicago. The Court grants Defendant's motion [46] to the extent that the Government would raise this topic in its opening statement. However, the Court reserves ruling on whether such evidence could become relevant based on the defense pursued by Defendant. In the event that the Government seeks to offer any testimony or argument on this topic, it will need to request permission from the Court before doing so.

## IV.    Conclusion

For these reasons, the Government's motion *in limine* [48] is granted in part and denied in part, and Defendant's motions *in limine* [35; 36; 37; 38; 39; 40; 41; 42; 43; 44; 45; 46] are granted in part, stricken in part, and denied in part.

Dated: August 21, 2017

_____
Robert M. Dow, Jr.
United States District Judge