# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Case No. 16-cr-477 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| DARRIUS WASHINGTON | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Darrius Washington's motion [110] for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. For the following reasons, Defendant's motion [110] is respectfully denied. This case is set for further status hearing on September 10, 2018 at 10:00 a.m. However, if counsel are able to schedule an agreed date for sentencing with the Courtroom Deputy in advance of that date, the status hearing will be stricken.

**I.  Background**

Defendant Darrius Washington was charged with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). [See 1.] Two Chicago Police Department officers testified at trial that while on patrol on May 12, 2016, they observed Defendant remove a high-polished chrome handgun from his waistband and throw it into a fenced yard of a residential building as they approached the intersection where Defendant was standing. The officers detained Defendant, and one officer then recovered a firearm from the fenced yard of the residential building. Defendant testified at trial that he did not have a gun on May 12, 2016 and that he did not throw a gun into that yard.

On September 1, 2017, a jury found Defendant guilty on the sole count in the indictment. [See 104.] On October 6, 2017, Defendant filed his motion for a new trial. [110; see also 112 (Government's response); 113 (Defendant's reply).]. After its initial review of the briefs, the Court

granted Defendant's request [117] that the Court set the matter for oral argument. In advance of the argument, the Court issued a series of questions [126] identifying the major issues it wished counsel to address.

## II. Legal Standard

Federal Rule of Criminal Procedure 33(a) authorizes a district court to grant a timely request for a new trial "if the interest of justice so requires." *United States v. O'Malley*, 833 F.3d 810, 811 (7th Cir. 2016) (quoting Fed. R. Crim. P. 33(a)). "'A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly.'" *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (citation and internal quotation marks omitted). Instead, Rule 33(a) is "'reserved for only the most extreme cases.'" *United States v. Hagler*, 700 F.3d 1091, 1101 (7th Cir. 2012) (quoting *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998)). "[C]ourts have interpreted the rule to require a new trial 'in the interests of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989).

## III. Analysis

Defendant contends that a new trial should be granted for two reasons: (1) the admission of still frame photographs from a YouTube video violated Federal Rule of Evidence ("Rule") 404(b); and (2) Defendant should have been allowed to engage the services of a police procedures expert. The Court addresses each argument in turn.

### A. Admission of Photographs and Related Testimony

Defendant argues that the admission into evidence at trial of still frame photographs from a YouTube video was unfairly prejudicial and violated Rule 404(b). Prior to trial, the Government filed a motion *in limine* to admit into evidence a music video that was posted to YouTube on

February 18, 2016. The Government sought to admit this video because it purported to show Defendant, along with several other men, holding and pointing what the Government claimed to be the same high-polished chrome handgun that the police recovered on May 12, 2016. According to the Government, this evidence showed that the Defendant actually had the ability to exercise control over, and did in fact exercise control over, "*the exact same pistol* both in the video and when CPD arrested him in May." [48, at 5.] Defendant objected to the admission of this evidence, arguing in part that it constituted improper character evidence pursuant to Rule 404(b). [54, at 2–3.]

In its pre-trial ruling the Court concluded that the admission of this evidence was not barred by Rule 404(b) because the purpose for which the Government sought to use it—to show that Defendant had recent access to the same gun recovered on May 12, 2016—was disconnected from any propensity-like trait. [82, at 11.] To limit the prejudicial effect of this evidence, however, the Court denied the Government's request to admit the entire video. Instead, the Court permitted the Government to admit certain still photographs extracted from the video, along with testimony by ATF Special Agent David LaMonte regarding the similarities between the gun in the video and the gun recovered by the police. [*Id.* at 13.]

At trial, the Government called Agent LaMonte to testify at the beginning of its case-in-chief regarding his examination of the gun recovered by the two Chicago police officers on May 12, 2016. Agent LaMonte was then recalled near the end of the trial to testify in greater detail regarding several features of the gun he examined that day. Specifically, he testified that this gun had a high-gloss chrome finish and four obliterations (alterations to the markings on the firearm),

which in his opinion were particularly unique firearm features.[1] Agent LaMonte also testified about other features of this gun, including a left-side grip panel; a distinctly flat trigger guard; distinct manufacturer markings noting that it was manufactured in the Czech Republic; raised site posts; an external safety system; slide serrations; an exposed skeletal hammer; and a right side ejection port. Aug. 31, 2017 Trial Tr., 405:14–415:22.

Agent LaMonte also testified about his search of social media sites and a video uploaded to YouTube on February 18, 2016 that he found in the course of this search. According to the agent, this video appeared to show Defendant holding a firearm. In conjunction with this testimony and pursuant to the Court's motion *in limine* ruling, the Government introduced into evidence certain still photographs captured from this video that the Court determined satisfied the Rule 401/403 standards weighing probative value against potential prejudice to Defendant. Agent LaMonte then testified regarding certain similarities between the firearm in the photographic stills and the firearm recovered in May 2016. He acknowledged that he was "not testifying to 100 percent certainty what was there" regarding the firearm in the video. Aug. 31, 2017 Trial Tr., 419:12–13. But, Agent LaMonte testified, in comparing the firearm in the video to the firearm recovered on May 12, "[t]he video depicts a firearm that to me appears to be a large, high-polished chrome semi-automatic pistol with black grips, safety switch, a skeletal hammer, raised sites, and all of the other features that I've described here today, including the obliterations." *Id.* 420:5–9. Agent LaMonte went on to testify regarding these similarities in more detail by describing the features of the firearm visible in the still photographs from the YouTube video, including the high-polish chrome finish, the site posts, the trigger guard, and the obliterations. *Id.* 425:8–427:11. The

---

[1] Other witnesses, including one of the Chicago police officers who arrested Defendant and an evidence technician, testified that firearms like this with high-gloss chrome finishes were unusual. Aug. 29, 2017 Trial Tr., 143:24–144:2; Aug. 30, 2017 Trial Tr. 326:17–20.

4

photographs from the YouTube video were also shown side-by-side with photographs of the recovered gun while Agent LaMonte testified regarding further similarities, including the grip handle, the safety, the slide grips, the slide posts, the trigger guard, and one of the obliterations. *Id.* 427:14–432:3. Defendant's counsel cross-examined Agent LaMonte regarding this comparison between the gun in the photographs and the gun recovered on May 12.

Defendant argues that the admission of these photographs and related testimony by Agent LaMonte violated Rule 404(b) because the Government used this evidence for a forbidden propensity inference—if Defendant handled a gun three months before his arrest in the video uploaded to YouTube, Defendant must have possessed a gun on the day of his arrest. [110, at 4.] Defendant further argues that this evidence was unfairly prejudicial and affected his substantial rights at trial because it invited the jury to decide the case based on this forbidden propensity inference. [*Id.*, at 10.] The Government argues in response that these photographs were used as direct evidence to establish Defendant's access to and ability to control *the* gun recovered on May 12, 2016. [112, at 1.]

"All evidentiary questions begin with Rule 402, which contains the general principle that '[r]elevant evidence is admissible' and [i]rrelevant evidence is not.'" *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) (en banc). Evidence is relevant if it has any tendency to make a fact of consequence more or less probable. Fed. R. Evid. 401. Evidence of a defendant's prior crime, wrong, or other act may be inadmissible however, despite its relevance, if this prior act is introduced only to show the defendant's propensity to commit crimes or to otherwise show that the defendant acted in accordance with that character trait on a particular occasion. *United States v. Schmitt*, 770 F.3d 524, 532 (7th Cir. 2014). But Rule 404(b) allows the use of such other-act evidence "only when its admission is supported by some propensity-free chain of reasoning."

5

*Gomez*, 763 F.3d at 856. However, "Rule 404(b) does not apply to direct evidence of the crime charged." *United States v. Ferrell*, 816 F.3d 433, 443 (7th Cir. 2015).

Contrary to Defendant's argument, the still frame photographs from the YouTube video were not admitted pursuant to Rule 404(b) as propensity evidence. Rather, as anticipated by the motions *in limine* that the parties filed prior to trial, these photographs were direct evidence of the charged crime because they were admitted to prove that Defendant had access to the recovered gun despite his denials that it was his and, therefore, tended to make it more probable that he did possess the gun on May 12. See *United States v. Miller*, 673 F.3d 688, 695 (7th Cir. 2012) ("Evidence of prior, uncharged gun possessions by felons" may be allowed under Rule 404(b), "at least where the prior possession was recent and involved the same gun"); *United States v. Stork*, 487 F. App'x 295, 297 (7th Cir. 2012) ("Testimony indicating that Stork recently had possessed the same gun found in the van was evidence of his charged crime, not propensity evidence."); *United States v. Canady*, 578 F.3d 665, 671 (7th Cir. 2009) ("[I]f the parties contest whether Canady possessed the gun in the SUV, evidence that he was seen with (and may have used) the gun minutes beforehand increases the likelihood that he possessed the gun in the car.").

The facts of *United States v. Miller*, 673 F.3d 688 (7th Cir. 2012), a case relied on by the Court to provisionally admit this evidence before trial, are directly on point here. Miller was arrested and charged with being a felon in possession after police searched his house and found a semi-automatic pistol under the mattress in the bedroom where he was alleged to be staying. 673 F.3d at 694. A witness testified at trial that she had seen Miller holding the same pistol two months prior: the witness identified it as the same pistol by its "dark, rusty grey color." *Id.* Miller argued that "the government used the testimony that he unlawfully possessed a gun in February to suggest to the jury that he is the sort of person who unlawfully possesses guns, and so likely possessed a

6

gun in April when charged." *Id.* at 695. The Seventh Circuit held that this evidence was properly admitted, however, because it "was directly relevant evidence of the charged crime, not propensity evidence." *Id*. Rather than suggesting that Miller was the type of person to unlawfully possess guns, this prior possession of a "rusty grey" pistol suggests that Miller owned, or at least could exercise control over, the rusty grey pistol found in his bedroom. *Id.*

Defendant attempts to distinguish *Miller* as a *constructive* possession case, noting that he was convicted of *actually* possessing a gun. Constructive and actual possession are two means of establishing the "possession" element of an offense. In an actual possession case, the government seeks to prove that the defendant had "physical control" of an object. See *United States v. Newman*, 755 F.3d 543, 545 (7th Cir. 2014). Constructive possession, by contrast, "is a legal fiction whereby a person is deemed to possess contraband even when he does not actually have immediate, physical control of the object." See *Schmitt*, 770 F.3d at 534 (quoting *United States v. Griffin*, 684 F.3d 691, 695 (7th Cir. 2012)); see also *United States v. Caldwell*, 423 F.3d 754, 758 (7th Cir. 2005) ("Constructive possession exists when a person knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others."); *United States v. Reed*, 744 F.3d 519, 526–27 (7th Cir. 2014) (affirming conviction based on constructive possession of firearm because enough evidence tied defendant to the closet where the firearm was found).

There may be cases where this distinction matters. See, e.g., *United States v. Piper*, 2014 WL 6660390, at *4 (C.D. Ill. Nov. 24, 2014) (finding that evidence of prior burglaries defendant allegedly committed were not probative of his actual possession of a firearm, but these prior offenses could be probative of constructive possession of a firearm). But this is not one of them. For purposes of legal analysis, the fact that this case involves proof of actual rather than

7

constructive possession of a firearm is a distinction without a difference. The Seventh Circuit's analysis in *Miller* did not turn on the constructive nature of the possession the government sought to prove. Moreover, the Seventh Circuit has followed *Miller*'s reasoning in other cases and admitted evidence of recent prior gun possessions as direct evidence rather than propensity evidence. In *United States v. Stork*, 487 F. App'x 295 (7th Cir. 2012), the defendant was charged with violating § 922(g)(1) after a handgun without a magazine was found in a car where he was the passenger, and a police officer heard (but did not see) defendant drop a gun magazine on the ground next to the car. 487 F. App'x at 296. The case thus involved defendant's constructive possession over the gun that was found in the car (not on his person). But the Seventh Circuit did not address the "constructive possession" nature of the case, and it determined that the district court did not abuse its discretion by admitting testimony about defendant's statement that he had been "shooting off" a gun earlier that day. *Id.* at 297. Citing *Miller*, the Seventh Circuit concluded that this testimony indicating that "Stork recently had possessed *the same gun* found in the van was evidence of his charged crime, not propensity evidence." *Id.* (emphasis added) (citing *Miller*, 673 F.3d at 694–95; *Canady*, 578 F.3d at 671).

Similarly, in *United States v. Canady*, 578 F.3d 665 (7th Cir. 2009), the defendant was charged with violating § 922(g) after a police officer claimed to have found a weapon in defendant's waistband. 578 F.3d at 668. The defendant was therefore charged with *actual* possession: a police officer claimed to have seen a gun on the defendant's person (although the Seventh Circuit again did not stress this particular fact). At trial, the government presented evidence linking the defendant to a home invasion and shooting that took place earlier in the evening. *Id.* at 669. The Seventh Circuit held that admitting this home invasion evidence was not

8

plain error, because this evidence "indicated that Canady used *the same gun* minutes before the accident, which, if true, would also support a guilty verdict." *Id.* at 671 (emphasis added).

These cases directly control the disposition of Defendant's motion. Here, the Government and Defendant presented two competing versions of the events that transpired on May 12. In one version, Defendant possessed and then threw the gun recovered from the front yard; in another version, Defendant never possessed a gun that day and the recovered gun was not his. Similar to *Miller*, *Stork*, and *Canady*, the still photographs captured from the YouTube video and accompanying testimony in this case constituted circumstantial, yet direct, evidence of the charged crime of possession of the firearm on May 12 because they tended to make more probable the version of events in which Defendant possessed *this* gun on that date. Agent LaMonte testified about the myriad similarities between the gun that was recovered from the fenced yard and the gun visible in the various still photographs pulled from the February 18 YouTube video. Agent LaMonte did not testify unequivocally that these two guns were the same, likely because he admitted he was not present when the video was shot and therefore could not have testified to that with complete certainty. However, this testimony regarding the similarities (including the obliteration marks and the high-polish chrome finish) shows that the still photograph evidence was not admitted to show that Defendant was "the sort of person who unlawfully possesses guns." *Miller*, 673 F.3d at 695. Instead, the evidence was admitted in an effort to convince the jury that Defendant had quite recently demonstrated the ability to exercise control over *the same gun* that was recovered on May 12, 2016.

Defendant relies on two cases from other circuits for his argument that the distinction between actual and constructive possession precludes the Court from relying on *Miller*, but these cases do not change the result here. See *United States v. Caldwell*, 760 F.3d 267 (3d Cir. 2014);

9

*United States v. Jones*, 484 F.3d 783 (5th Cir. 2007). In *Caldwell*, several detectives testified at trial that they observed the defendant physically remove a gun from his waistband, making this an actual possession case. The district court admitted evidence of defendant's prior convictions for unlawful firearms possessions as relevant to defendant's knowledge. 760 F.3d at 278. However, because the defendant was charged with actually possessing a gun, the Third Circuit held that the defendant's knowledge was not an issue in this case, and thus knowledge was not a proper basis for admitting evidence of the defendant's prior convictions under Rule 404(b). *Id.* at 279–81. The court noted that the only possible rationale for admitting this prior possession evidence as relevant to defendant's knowledge is that "[i]f Caldwell knowingly possessed firearms in the past, he was more likely to have knowingly possessed the firearm this time." *Id.* at 282. This propensity-based inferential logic is what Rule 404(b) forbids. *Id.*

In *Jones*, the defendant was charged with violating § 922(g)(1) and at trial, a police officer testified that he saw defendant remove an object from his waistband and throw it under a house; a handgun was recovered from underneath that house. 484 F.3d at 785. The district court allowed the factual basis for the defendant's previous firearm offense into evidence as probative of knowledge, intent, and absence of mistake or accident. *Id.* at 787. The district court also speculated that the evidence of defendant's knowledge and intent would be relevant to proving defendant's constructive possession of the recovered gun. However, the Fifth Circuit concluded that because defendant's case exclusively involved actual possession, his knowledge and intent were not in issue. *Id.* at 788. Therefore, evidence of Defendant's prior crime was not relevant to proving actual possession. *Id.* at 790; *see also United States v. Linares*, 367 F.3d 941, 946–47 (D.C. Cir. 2004) (holding in felon-in-possession case that Rule 404(b) barred the admission of evidence that the defendant was arrested for possessing a handgun four-and-a-half years prior in

10

order to prove the defendant's intent, knowledge, and absence of mistake: "we do not understand how Linares's previous possession of a pistol makes it any more likely that he knowingly possessed a gun this time.").

While these cases discuss the difference between actual and constructive possession, the more relevant distinction they highlight is the difference between evidence of prior possession of *a gun* and evidence of prior possession of *the gun*. In *Caldwell* and *Jones*, there is no indication that the prior gun possessions were being introduced as direct evidence that the defendants had any type of control over *the same gun* charged in the indictment. Instead, the evidence was admitted in these cases to prove knowledge or intent because of the defendants' prior possession of *a* gun. In that situation, the introduction of prior possession evidence relied on the kind of propensity inference that Rule 404(b) forbids. In Defendant's case, Agent LaMonte's testimony demonstrates that the prior possession evidence of the YouTube still photographs came into evidence for the same purpose identified by the Court in its motion *in limine* ruling: "to show that Defendant had recent access to the same gun that was ultimately recovered by police on May 12, 2016." [82, at 9.] This inference is disconnected from any propensity-like character trait and, therefore, Rule 404(b) is inapplicable.

For similar reasons, Defendant's reliance on *United States v. Hicks*, 635 F.3d 1063 (7th Cir. 2011) is misplaced. In *Hicks*, the Seventh Circuit determined that a defendant's prior drug convictions should not have been admitted at his trial for drug distribution in violation of 21 U.S.C. § 841(a)(1) because "the only apparent relevance of the prior convictions was the very inference that Rule 404(b) prohibits—that is, that Hicks had sold drugs in the past and probably did so this time as well." 635 F.3d at 1073. As the Government points out, *Hicks* is distinguishable from Defendant's situation because it involves prior possession of a fungible substance (cocaine in

*Hicks*). In a case involving prior possessions of fungible substances, such evidence is not likely to be direct evidence of the crime charged because there is little chance that the drugs from previous instances of possession will be the same drugs at issue in the current indictment. This kind of prior possession evidence is thus much harder to disconnect from the propensity inference that Rule 404(b) prohibits.

Again, the Seventh Circuit's analysis in *Miller* is instructive. In *Miller*, although the defendant's felon-in-possession conviction was affirmed, the defendant's convictions for possession with intent to distribute and possession of a firearm in furtherance of that crime were reversed. The Seventh Circuit held that the admission of Miller's eight-year-old conviction for possession of cocaine violated Rule 404(b) because the only purpose of such evidence was an impermissible propensity inference. 673 F.3d at 695–96. The Seventh Circuit noted that while intent was one purpose proffered for admission of the prior conviction, this evidence could not be admissible as pattern evidence merely because it "also involved drugs in small plastic bags," as "[c]rack cocaine in small plastic bags is far too generic in drug cases to make a pattern of two acts over eight years probative of anything beyond propensity." *Id.* at 699–700. Here, as already discussed, the YouTube still photographs were not introduced as evidence that Defendant had previously possessed a generic gun and so he must have possessed a gun on May 12. These photographs were instead introduced as direct evidence of his control over the gun from May 12, easily disconnected from the forbidden propensity inference. Therefore, Rule 404(b) did not bar their admission into evidence.

Defendant makes various other arguments regarding the admission of the photographs, including that they show more than one person handling the gun at issue and the video was uploaded over four months before Defendant's arrest. [110, at 8.] Defendant maintains that these

facts reduce the connection between Defendant and the weapon that was recovered. These arguments address the weight the jury should give to these YouTube stills and Agent LaMonte's testimony and do not affect their admissibility as direct evidence.[2]

The Court also concludes that the admission of these YouTube stills was not unfairly prejudicial under Rule 403. See *Gomez*, 763 F.3d at 856–57 (district courts have discretion to exclude relevant evidence if its probative value is "substantially outweighed by a danger of * * * unfair prejudice") (quoting Fed. R. Evid. 403). In its ruling on the parties' pre-trial motions, the Court only allowed the introduction of photographs from the YouTube video, rather than the video itself, to avoid the video's most inflammatory and irrelevant features and minimize the risk of unfair prejudice to Defendant. [82, at 13.] As discussed, these photographs were actually used at trial for the purpose that was anticipated by the parties' extensive briefing—as direct evidence that Defendant previously had access to the same gun that he was charged with possessing on May 12. Thus, Defendant's substantial rights were not affected by the admission of this evidence, and a new trial is not warranted on this basis.

B. **Request for Police Procedures Expert**

Defendant also argues that the Court's denial of his request to approve the retention of a police procedures expert was error and warrants a new trial.

---

[2] Similarly, Defendant argues in his reply that "[p]rior handling of a gun months before does not establish that Darrius had a gun in his hand that day any more than possession of five dollars months ago prove[s] that a wallet contains five dollars today." [113, at 1–2.] The contested evidence does not have to "establish" possession to be admissible; it need only be relevant and otherwise comply with the Federal Rules of Evidence and other applicable laws. Fed. R. Evid. 402. Moreover, this analogy demonstrates the importance of distinguishing between direct evidence of the charged crime and propensity evidence. Possession of five dollars at a prior point in time may be introduced to show that a defendant is the type of person who possesses five dollars, in which case it would be evidence of a defendant's propensity. However, evidence that a person's wallet months ago contained a five dollar bill with a specific serial number and specific (and unusual) markings on it that are unique to that bill can be direct evidence that he possessed *that same* five dollar bill months later.

The Criminal Justice Act provides that an indigent defendant may request a district court to authorize counsel to obtain expert services that are "necessary for adequate representation." 18 U.S.C. § 3006A(e)(1). In the Seventh Circuit, whether expert services are "necessary" depends on whether a "reasonable attorney would engage such services for a client having the independent financial means to pay for them." *United States v. Cravens*, 275 F.3d 637, 639 (7th Cir. 2001) (quoting *United States v. Alden*, 767 F.2d 314, 318–19 (7th Cir. 1984)). Before authorizing such services, however, a court should satisfy itself that the defendant has made a timely request for these services, and that the defendant has a plausible basis for hiring the expert. See *United States v. Winbush*, 580 F.3d 503, 508–09 (7th Cir. 2009) (denial of defendant's request for expert was not an abuse of discretion where request was made two business days before trial, and defendant had no plausible defense that would make the requested expert necessary); *United States v. King*, 356 F.3d 774, 778 (7th Cir. 2004); *Cravens*, 275 F.3d at 639; *Alden*, 767 F.2d at 318–19.

On August 18, 2017, ten days before his trial was scheduled to start, Defendant moved for authorization of expert services pursuant to 18 U.S.C. § 3006A(e). [See 79.] Defendant sought to engage the services of Dennis Waller, an expert on police procedures, to testify regarding what a reasonable officer would or should have done in the context of Defendant's arrest. Defendant sought to use this testimony to argue against the credibility of the arresting officers. [*Id.*] The Government objected, [see 81], and while the Court invited Defendant to file a reply, he chose not to do so.

On August 24, 2017, the Court denied Defendant's motion for three reasons. [See 90.] First, the motion was untimely, as the request came approximately one week before jury selection in the case was scheduled to begin. Second, the motion was deficient, as Defendant's request did not summarize Mr. Waller's opinions or the bases for those opinions. Finally, based on the brief

14

description of Mr. Waller's opinions that Defendant did provide, Mr. Waller's testimony would have been inadmissible under Rule 702 because an expert cannot testify as to credibility issues.

This issue does not merit extended discussion. Defendant's motion for authorization of a police procedures expert was not made until well after the parties' pretrial deadlines had passed, and the request was therefore untimely. See *Winbush*, 580 F.3d at 508 (motion was properly denied where it was filed only two business days before trial); *United States v. Davis*, 77 F. App'x 902, 906 (7th Cir. 2003) (district court's decision to deny request for appointment of expert was not an abuse of discretion, where defendant did not file motion until several weeks after pre-trial motion deadline had expired). Defendant makes no argument that the motion was timely or that there was any reason for the Court to excuse the untimely filing. Moreover, given the barebones nature of the request, the Court could not consider whether Defendant had a plausible basis for hiring the expert before authorizing funds to do so. See *Cravens*, 275 F.3d at 639. The only basis for this police procedures expert proffered by Defendant was that it would address the credibility of the officers who had arrested him. But "credibility questions are within the province of the trier of fact." *Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000). Therefore, Mr. Waller's testimony would not have been admissible, and Defendant had no "plausible" defense that required hiring the expert. *Cravens*, 275 F.3d at 639.

For these reasons, the Court denies Defendant's motion for a new trial.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion [110] is respectfully denied. This case is set for further status on September 10, 2018 at 10:00 a.m. However, if counsel are able to schedule an agreed date for sentencing with the Courtroom Deputy in advance of that date, the status hearing will be stricken.

Dated: August 31, 2018

_____
Robert M. Dow, Jr.
United States District Judge